[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 17, 2008
THOMAS K. KAHN
CLERK

No. 07-13143
Non-Argument Calendar

_____

D. C. Docket No. 06-21032-CV-ASG

MARK WHITTINGTON,

Plaintiff-Appellant,

versus

TOWN OF SURFSIDE, FL,
a municipality,
PATRICK JOHN GIAMBALVO,
individually,
LUIS PEREZ,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 17, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Mark Whittington appeals the district court's order granting summary judgment in favor of defendant Town of Surfside ("Surfside") on Whittington's 42 U.S.C. § 1983 claim that he was falsely arrested by Surfside police officers in violation of the Fourth Amendment. After review, we affirm.

## I. BACKGROUND

### A. Whittington's Arrest

We review the facts in the light most favorable to Whittington.

On February 19, 2004, Whittington was waiting at a bus stop in Surfside. He leaned up against a concrete post which had a bus stop sign attached to it. When the wind blew, the sign became loose to some extent and hit Whittington in the face. The force from the sign broke Whittington's sunglasses. Whittington then tore the sign from the post and threw it to the ground. Whittington alleges that he did this so no one else could be injured by the sign.

Several teenagers at the bus stop laughed after seeing the sign hit Whittington. Whittington had words with them, and they left the bus stop. Whittington observed one of the members of this group, who was later identified as Chris Marco, stop and speak with Surfside police officer Luis Perez. According

to Officer Perez's police reports, Marco told him that he had observed a white male wearing an orange Miami Hurricanes sweatshirt tear the bus stop sign from the pole. Officer Perez then came and stood directly behind Whittington, whose appearance matched Marco's description, for the next several minutes until the bus arrived.[1] Officer Perez did not say anything to Whittington or stop him from boarding the bus.

Whittington boarded the bus and sat near the back of the bus. Approximately four or five blocks later, two Surfside police cars pulled up beside the bus and pulled it over. Whittington overheard a conversation between two men sitting near him who he assumed were construction workers based on their clothing. Whittington claimed that one told the other, "I can't take it. You take it. I'm on parole." Whittington decided to walk toward the front of the bus. Whittington thought that the police were stopping the bus because of his earlier incident with the bus stop sign, and he also wanted to separate himself from the two men.

After the bus stopped and Whittington started to exit the bus, he was confronted by six police officers. One of the officers had his gun out and another was holding a club. One officer said, "get off the bus, you God damn scumbag."

---

[1]In contrast to Whittington's version of the events, Officer Perez stated in his report that Whittington had already boarded the bus by the time he reached the bus stop.

At this point, Whittington had not indicated that he would refuse to exit the bus or tried to resist the officers in any way.

Two officers, allegedly Officers Patrick Giambalvo and Perez, reached up, grabbed him by the shirt in his chest area, and pulled him down from the bus. His momentum carried him from the bus into some hedges in a yard, and the officers fell on top of him. Whittington felt his knee pop as this happen. Whittington indicated that, at this point, all of the officers present piled onto him. The officers kept saying to him, "[g]o ahead, resist, come on, give us a reason." The officers handcuffed him and sat him on the sidewalk.

Officer John Fiorito claimed that he observed Whittington throw a white bottle as he walked toward the front of the bus and relayed this information to Officer Giambalvo. Officer Giambalvo searched the bus and found a white bottle that contained a small amount of marijuana. Whittington denies that this bottle was his and assumes that it belonged to one of the two men who were sitting near him on the bus.

Whittington was arrested for possession of marijuana and criminal mischief and issued a notice to appear in court. The charges against Whittington were ultimately dismissed.[2] Although the record reveals that the Assistant State

_____

[2]On appeal, Whittington argues briefly that the seizure of marijuana was the fruit of an unlawful arrest and could not be used against him. Because Whittington did not raise this claim

Attorney dropped the charges against Whittington because the arresting officer failed to appear in court, Whittington contends that Officer Perez was present on his court date.

## B.    Whittington's Lawsuit

Whittington filed a complaint in Florida state court alleging multiple state law and federal constitutional violations, including false arrest, against Surfside, as a municipality, and Officers Perez and Giambalvo, individually.  The defendants removed the case to federal court and moved to dismiss Whittington's complaint. The district court granted the defendants' motion to dismiss in part and allowed Whittington to reallege some of his claims in an amended complaint.[3]  After Whittington filed a second amended complaint, the defendants moved for summary judgment.  The district court granted summary judgment for the defendants on all claims.[4]  Subsequently, Whittington settled his claims against Officers Perez and

---

in the district court, we decline to address it.  Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (stating rule that this Court generally will not consider an issue on appeal that was not raised first in the district court).

[3]The district court dismissed with prejudice Whittington's state law claims of negligence and malicious prosecution against Surfside and his federal due process claims against Surfside, Officer Perez, and Officer Giambalvo.  Because Whittington does not challenge these dismissals on appeal, these claims are now deemed abandoned.  Access Now, Inc., 385 F.3d at 1330.

[4]Specifically, the district court granted summary judgment in favor of the defendants on Whittington's claims against (1) Surfside for state law false arrest and false imprisonment and under § 1983 for false arrest and substantive due process and equal protection violations; and (2) Officers Giambalvo and Perez under § 1983 for false arrest, excessive force, and substantive due process and equal protection violations.

Giambalvo individually.  This appeal involves only his § 1983 claim for false

arrest against the Town of Surfside.[5]

## II. DISCUSSION[6]

In order to prevail in a § 1983 action, the plaintiff must show a deprivation

of a federal right by a person acting under color of state law.  Griffin v. City of

Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  Municipalities and other local

government entities are included among those persons to whom § 1983 applies,

Monell v. Department of Social Services., 436 U.S. 658, 690-91, 98 S. Ct. 2018,

2036 (1978), but may not be held liable on a respondeat superior theory, Board of

County Commissioners v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388

(1997).

Instead, to impose § 1983 liability on a municipality, a plaintiff must show:

(1) that his constitutional rights were violated; (2) that the municipality had a

policy or custom that constituted deliberate indifference to that constitutional right;

---

[5]Because Whittington only appeals his § 1983 false arrest claim against Surfside, he has abandoned all other claims on appeal.  Access Now, Inc., 385 F.3d at 1330.  Further, his "Summary of the Argument" and "Statement of Issues" pages only reference § 1983, and not Florida state law, and thus we construe his brief as only appealing his § 1983 claim against Surfside for false arrest.  See APA Excelsior III L.P. v. Premiere Technologies, Inc., 476 F.3d 1261, 1269-70 (11th Cir. 2007) (concluding, based in part on examination of statement of issues in initial brief, that issue was not clearly raised in initial brief and was thus abandoned).

[6]We review de novo a district court's order granting summary judgment.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).

6

and (3) that the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). A custom is a practice that is so settled and permanent that it takes on the force of law. Monell, 436 U.S. at 691, 98 S.Ct. at 2036.

It is unnecessary to address here whether Whittington's constitutional rights were violated by Surfside because he has failed to create a genuine issue of material fact that there was a custom or policy in Surfside that caused the alleged constitutional violation. Whittington stated the basis for § 1983 liability against Surfside in his second amended complaint as follows:

> PEREZ fabricated this charge because of a custom and policy that existed in SURFSIDE wherein citizens such as plaintiff were harassed by police officers without cause based on their nonconformist and "hippie-like" appearance, all for the purpose of depriving plaintiff of his substantive due process rights to be free from unlawful infringement from unreasonable seizure by police authorities. This Surfside policy of infringing on the rights of citizens such as plaintiff took on the form of policemen "staring down" citizens as a form of intimidation, fabricating witnesses and evidence, and knowingly and purposefully failing to preserve evidence that would exculpate accused citizens such as plaintiff.

> In support of his allegations of a custom or policy of police harassment in

7

Surfside, Whittington proffers only the deposition testimony of current Surfside Mayor Charles Burkett.  In the deposition excerpts submitted by Whittington, Whittington's counsel questioned Mayor Burkett regarding a newspaper article reporting on a September 2006 commission meeting in which Mayor Burkett was quoted as saying that people in the past had told him that they were afraid of Surfside police officers and that officers were "intimidating people with their look and their stares."  Mayor Burkett testified that the quote could be accurate, but he could not remember for sure if he had said it.

Mayor Burkett further testified that people complained to him about the Surfside police, particularly an Officer Davis, when he was running for office in 2004.  Mayor Burkett testified that he "was hearing that, you know, the S.W.A.T. teams were coming to houses and harassing people and scaring them" and that his reaction was that these tactics were "very heavy-handed."  Mayor Burkett further testified that he was told that there would be police officers in full gear stationed at every corner of the room at public meetings in Surfside and that his experiences at meetings was that it "was not a happy situation."

These anecdotes relayed to Mayor Burkett around the time he was running for office in 2004 do not create a genuine issue of material fact that there was an official policy or custom of harassment that caused Whittington's alleged

8

constitutional injury. Mayor Burkett's testimony does not reference any citizen complaints about Surfside police officers harassing individuals with a "nonconformist" or "hippie-like" appearance, fabricating witnesses and evidence, or failing to preserve evidence that would support Whittington's claim that there was an official custom or policy of such. To the extent that Mayor Burkett's deposition references a statement he made regarding complaints that police officers were intimidating people with their stares, the referenced news article from September 2006, which was a year and a half after the February 2004 incident here, does not support Whittington's claim that there was such a policy or custom of intimidating people with stares in February 2004.

Further, the record contains an affidavit from Mayor Burkett in which he states that he (1) held no public office in Surfside in February 2004 when the alleged incident occurred; (2) had no personal knowledge of any Surfside police internal customs or policies that existed on or before February 19, 2004; and (3) is not aware of any instances or alleged instances of excessive force or false arrest by the Surfside police department. Thus, Mayor Burkett's own affidavit reveals that he had no actual knowledge of Surfside police policies or customs in February 2004. Even if he did, his knowledge would not necessarily demonstrate that Surfside officials were on notice of such official policies or customs so as to

9

warrant holding Surfside liable here because Mayor Burkett was not a public employee in Surfside in February 2004.

Therefore, because Whittington has failed to create a genuine issue of material fact that his alleged constitutional violation was caused by a municipal custom or policy, we affirm the district court's grant of summary judgment in favor of Surfside.

**AFFIRMED.**